IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patricia Ann Fimiani, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Carolyn W. Colvin, Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant. )<br>_____) | C/A No. 0:15-3897-RMG-PJG<br><br><br>**REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Patricia Ann Fimiani, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

PJG

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



## ADMINISTRATIVE PROCEEDINGS

In April 2012, Fimiani applied for DIB, alleging disability beginning July 27, 2010. Fimiani's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on December 12, 2013, at which Fimiani, who was represented by James Callahan, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on March 7, 2014 finding that Fimiani was not disabled. (Tr. 16-28.)

Fimiani was born in 1960 and was forty-nine years old on her disability onset date. (Tr. 26.) She has passed a General Educational Development ("GED") test and has past relevant work experience as a janitor. (Tr. 190.) Fimiani alleged disability due to depression, anxiety, panic attacks, insomnia, and fibromyalgia. (Tr. 189.)

In applying the five-step sequential process, the ALJ found that Fimiani had not engaged in substantial gainful activity since July 27, 2010—her alleged onset date. The ALJ also determined that Fimiani's obesity, fibromyalgia, spondylosis in the lumbar spine, hypothyroidism, mild arthritis to the knee, depression, and anxiety were severe impairments. However, the ALJ found that Fimiani did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Fimiani retained the residual functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c) except she cannot climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she must avoid working at unprotected heights; and she is limited to simple, routine repetitive tasks in an environment where there is only casual interaction with the general public.



(Tr. 21.) The ALJ found that Fimiani was unable to perform any past relevant work, but that, considering Fimiani's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Fimiani could perform. Therefore, the ALJ found that Fimiani was not disabled from July 27, 2010—her alleged onset date—through the date of his decision.

Fimiani submitted additional evidence to the Appeals Council, which denied her request for review on July 21, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-6.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Fimiani raises the following issues for this judicial review:

I. Because there is no substantial evidence that Ms[.] Fimiani can sustain any work requiring more than a "sedentary" exertional level, a finding of disabled is directed by the Defendant's "grid rules."

II. It was error for the ALJ to fail to find that Plaintiff's tremors, irritable bowel syndrome (IBS), and gastro-esophageal reflux disease (GERD[)] and bladder frequency were "severe impairments."

III. It was error for the ALJ to promulgate an incomplete "residual functional capacity" (RFC) that improperly failed to accommodate all of Plaintiff's limitations supported by the evidence.

(Pl.'s Br., ECF No. 16.)

**DISCUSSION**

Upon review of Fimiani's allegations of error, the court finds that the cumulative effect of some of these allegations requires remand for further consideration of Fimiani's application.

As an initial matter, the court observes that it is unclear whether the ALJ found that Fimiani was limited to a limited range of light exertional work or medium exertional work. The residual functional capacity assessment in the decision states that the ALJ limited Fimiani to a reduced range of medium exertional work. However, some of the ALJ's subsequent findings are inconsistent with such a residual functional capacity. Specifically, the ALJ found that Fimiani was unable to return to her past relevant work based on the vocational expert's testimony that "the claimant would not be able to perform her past relevant work with the above residual functional capacity." Further, after stating that if Fimiani could perform the full range of medium work, the medical-vocational guidelines would direct a finding of not disabled, the ALJ observed that Fimiani had additional limitations impeding her ability to perform all or substantially all of the requirements of medium



work. The ALJ continued, stating "[t]o determine the extent to which [the additional] limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (Tr. 27.) The ALJ then found that the vocational expert testified that such an individual would be able to perform the requirements of representative occupations such as: storage clerk, tobacco sampler, and coupon clerk. Contrary to these findings, the hearing transcript reflects that when presented with the hypothetical question containing the limitations of a reduced range of medium work, the vocational expert testified that Fimiani *could* return to her past relevant work as a janitor. Further, when presented with the hypothetical question containing the limitations of a reduced range of *light* work, the vocational expert testified that Fimiani could not return to her past relevant work as a janitor, but that such a hypothetical individual could perform the requirements of storage clerk, tobacco sampler, and coupon clerk. Fimiani appears to argue that based on the ALJ's other findings, the ALJ intended to find that she was limited to a reduced range of *light* work despite his repeated statements that she was limited to a reduced range of *medium* work. The Commissioner appears to argue that the ALJ found Fimiani was limited to a reduced range of *medium* work and that the finding that she could not return to her past relevant work was the erroneous statement. The Commissioner further argues that such an error was harmless.

Fimiani also raises several issues regarding the ALJ's determination at Step Two of the sequential analysis. At this step, the ALJ found that Fimiani's obesity, fibromyalgia, spondylosis in the lumbar spine, hypothyroidism, mild arthritis to the right knee, depression, and anxiety were severe impairments, but Fimiani's irritable bowel syndrome (IBS), sleep apnea (OSA), tremor, and



gastroesophageal reflux disease (GERD) were nonsevere impairments. Fimiani challenges the ALJ's determination that her IBS, tremor, and GERD were nonsevere impairments. She also argues that the ALJ erred in failing to find or even consider whether her alleged bladder frequency was a severe impairment.

With regard to Fimiani's tremor, the ALJ found that Fimiani "has repeatedly reported a tremor, but by her own testimony it is effectively controlled with anti-anxiety medications." (Tr. 19.) Later in the decision, the ALJ also observed that (1) in November 2012 Fimiani's "primary care provider noted she was asymptomatic of her tremor with Xanax . . ." (Tr. 23), (2) in January 2013, Fimiani presented to a neurologist for evaluation of her tremor during which "[m]otor exam disclosed a low amplitude generalized tremulousness of the head, trunk, and extremities, but Dr. Baumgartner stated the etiology of tremor unknown" (id.), and (3) in August 2013, Fimiani reported to her psychiatrist that her shaking was slowly getting worse and "[o]nly mild to minimal shaking was observed." (Id.) Further, the ALJ stated the following with regard to the opinion from a state agency reviewer:

> The state agency medical consultant found the claimant capable of performing light work with some occasional postural limitations, limited handling and fingering. (Exhibit 4A) The state agency medical consultant limited handling and fingering based on the claimant's fine.[2] The opinion of the state agency medical consultant is given little weight as the medical evidence of record shows the claimant retains full strength, despite her impairments, and that her tremor is mild and can be controlled with medication.

---

[2] The court observes that this sentence is incomplete. Upon review of the state agency reviewer's opinion, it appears that the sentence is referencing a statement on page 99 of the transcript. Specifically, the consultant indicated that handling and fingering was limited based on Fimiani's fine tremor that was noted in an August 2011 examination. The consultant also stated that the benefit of the doubt was given to Fimiani, observing that no tremor was noted on her rheumatology examination in October 2012. (See Tr. 99.)



(Tr. 25.) Finally, the ALJ summarized third-party functional statements that mentioned Fimiani's tremors or shakes, which the ALJ appears to have discounted or rejected.

Thus, the ALJ appears to have found that Fimiani's tremor was nonsevere and did not result is any additional limitations in her residual functional capacity based on Fimiani's testimony during the hearing as well as records indicating that her tremor was mild. However, review of the transcript appears to indicate that although Fimiani stated that the Xanax would make the shaking go away, the ALJ does not appear to have considered the quantity of Xanax and its resulting side effects in determining Fimiani's residual functional capacity. Specifically, when questioned by her attorney, Fimiani testified as follows:

> Q   All right. Let us talk about the shaking and the Xanax. When you take -- have the doctors told you what they think is causing the shaking?
> A   No.
> Q   Okay. But they, they know you have it. I mean, they --
> A   Yes, sir.
> Q   When you take the Xanax three times a day, does that make the shaking go completely away?
> A   Yes.
> Q   Okay. Is there any difficulty, though, with your taking the Xanax?
> A   Yes. It's -- makes me very tired, and sometimes it makes me sleep.
> Q   Okay. When you say sometimes it makes you sleep, I mean is that just something that happens every once in a while or does it happen --
> A   Well, it happens most often.
> Q   Okay. When you, when you take the Xanax?
> A   Yes, sir.
> Q   Okay. So, did you take any Xanax this morning?
> A   I took a half of one, not a whole one.
> Q   Okay. Why did you just take a half of one?
> A   Because I didn't know if I would be able to come in here and speak because it makes me very drowsy.
> Q   Okay. You might need to speak up just a little bit --
> A   I'm sorry.
> Q   -- so the judge can hear you.
> A   I'm sorry.

> Q      Okay. And have you talked to your doctors about this effect that the Xanax has?
> A      Yes.
> Q      Okay. And basically they say, well, that's just the -- that's just what you have to deal with?
> A      Yeah, may just -- makes me tired, yeah.

(Tr. 44-45.) Since the ALJ found Fimiani's tremor was a nonsevere impairment and did not find any additional limitations were warranted because when Fimiani took her Xanax three times per day the shaking stopped, the court is unable to determine whether Fimiani's ultimate residual functional capacity is supported by substantial evidence as it is unclear whether the ALJ also considered the alleged side effects from taking the Xanax three times a day.

Moreover, the ALJ's decision does not reflect that he considered Fimiani's allegation that her bladder frequency was a distinct severe impairment with specific limitations. Although the Commissioner argues any such error by the ALJ is harmless as he included that Fimiani "should work close to a bathroom to accommodate her symptoms of diarrhea"[3] (Tr. 26), in light of the other errors the court finds that further consideration of this alleged impairment is also warranted. Further supporting this finding is the vocational expert's testimony that "an individual who not only has to have close access to a toilet, but as a result of toilet requirements would be expected to have to leave the workstation at least about every 90 minutes throughout the day on an urgent, unscheduled basis" would not be able to perform her past relevant work or any of the jobs the vocational expert identified. (Tr. 66-67.) Therefore, specific findings on the frequency of Fimiani's bathroom requirements may impact the ultimate disability determination.

---

[3] The court also observes that although this limitation was not included in the detailed residual functional capacity assessment contained in finding number 5, it is included in the ALJ's discussion and was presented to the vocational expert.



Therefore, the court finds that the cumulative impact of the inconsistent findings, of which the parties appear to dispute the correct interpretation; the failure to consider potential additional limitations as a result of finding that with medication Fimiani's tremor is resolved; and the possible failure to consider her alleged bladder frequency, renders the court unable to determine whether the ALJ's decision is supported by substantial evidence or a correct application of the law. Therefore, the court is constrained to recommend that this matter be remanded for further consideration.

Further consideration of these matters may impact Fimiani's remaining issues. Therefore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address the plaintiff's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 27, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).